

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

February 25, 1993

Honorable Allen Ross Hightower
Chairman
Committee on Corrections
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-204

Re: Authority of a county to improve certain subdivision roads and assess the cost of repairs against subdivisions (RQ-457)

Dear Representative Hightower:

You have requested our opinion regarding the proper construction of article 6702-3, V.T.C.S., in further clarification of Attorney General Opinion DM-126 (1992). Article 6702-3, V.T.C.S., which authorizes a commissioners court to improve a road in a subdivision and assess the costs against the owners of real property within the subdivision, provides:

(a) This article applies only to a subdivision or a part of a subdivision in an unincorporated area of the county. To the extent that this article authorizes the improvement of an access road to a subdivision, this article applies only to an access road in an unincorporated area of the county.

(b) In this article, "improvement" means the construction, reconstruction, or repair of a road.

(c) The commissioners court of a county may order that the county improve a road in a subdivision or an access road to a subdivision to comply with any county standards for roads and assess all or part of the costs of the improvement pro rata against the owners of real property in the subdivision if:

(1) the commissioners court determines that the improvement is necessary for the public health, safety, or welfare of the residents of the county; and

(2) a majority of those record owners of real property in the subdivision who are voting vote by mailed ballot in favor of the county improvement and assessment.

(d) Before ordering an improvement and assessment under this article, the commissioners court must give notice of the proposed

improvement and assessment and must hold a public hearing on the question. . . .

(e) Within 10 days after the date of the public hearing, the commissioners court shall send by certified mail to each owner of real property in the subdivision a ballot on the question and a return addressed, stamped envelope for the return of the completed ballot to the county clerk. . . .

In Attorney General Opinion DM-126, we concluded that a commissioners court which orders improvements to a road in an unincorporated area of the county as the result of an election held under article 6702-3, V.T.C.S., may delegate the details of the process of collecting the assessment against the affected property owners, and that it may also determine the precise formula for calculating the assessment, with special regard for the particular benefits which will accrue to each property owner. We also concluded that the costs of holding the election and collecting the revenues may not be assessed against the property owners.

In clarification of Attorney General Opinion DM-126, you first ask whether "each recorded, plat[t]ed, subdivision [is] to be treated as an autonomous entity as to the [a]mount of assessment and counting votes." We understand you to ask whether the statute permits the commissioners court to hold an election on an improvement and assessment among real property owners in two or more subdivisions. We conclude that it does not. The statute repeatedly refers to "a subdivision" and "the subdivision." Clearly, the commissioners court must propose separate assessments and hold separate elections in each subdivision.

You also ask at what point after a subdivision votes to participate in an improvement a lien against the real property to secure an assessment may be recorded. Sections (g) and (h) of article 6702-3 provide as follows:

(g) In making an assessment under this article, the commissioners court may provide the time, terms, and conditions of payment and default of the assessment, except that the commissioners court may not require the payment of any interest on an assessment.

(h) An assessment shall be secured by a lien against the real property of the assessed property owner. The lien shall be effective from the date that written notice of the assessment is filed for record and recorded in the office of the county clerk of the county in which the assessed property is located. Such written notice shall be in recordable form and contain the dollar amount of the assessment, the legal description of the property assessed, and the name and address

> of each property owner. The lien securing the assessment shall be
> inferior only to tax liens and to bona fide mortgage liens recorded
> prior to the effective date of the assessment lien. Each property
> owner shall be personally liable for the amount of the assessment.

Although section (h) requires that a lien secure an assessment, it does not specify when such a lien shall be recorded. Section (g) gives the commissioners court broad discretion to "provide the time, terms, and conditions of payment and default of [an] assessment." We believe that section (g) gives the commissioners court the authority to determine when the lien will be recorded after an assessment has been approved by a subdivision. *See also* Attorney General Opinion DM-126 at 3 ("the commissioners court, in the absence of statutory guidelines, must determine the details of the collection process").

Next, you ask how the commissioners court should proceed in the event an approved assessment is not sufficient to complete the improvement. In particular, you ask whether the work on the improvement should be stopped, and how completion of the project should be funded. The statute does not directly address this particular scenario. Section (c) authorizes the commissioners court to "assess *all or part* of the costs of [an] improvement" against the real property owners in a subdivision. (Emphasis added.) Thus, the statute appears to contemplate that the commissioners court has the option of funding part of an improvement from other sources. Therefore, we believe that the commissioners court may opt to continue work on the improvement and to pay for such work with non-assessment funds. The statute would also appear to authorize the commissioners court to propose a new assessment to complete the project and to hold a new election according to the statutory requirements. Clearly, however, the real property owners cannot be charged for additional costs above the maximum assessment, without their approval.[1]

Finally, you ask what costs may be assessed against the real property owners aside from costs for actual construction of improvements. You ask, for example, whether construction loan interest expenses, costs for engineering services used to determine the required improvements, or charges for bid publications may be included in the assessment. Article 6702-3(c) authorizes the commissioners court to assess only "all or part of the costs of the improvement." "Improvement" is defined in the statute as "the construction, reconstruction, or repair of a road." V.T.C.S. art. 6702-3(b). In Attorney General Opinion DM-126, we concluded that this statutory language does not permit the commissioners court to include in the assessment the costs of holding the election and collecting the assessment. We did so because the statute clearly does not authorize the commissioners court to assess real property owners for administrative costs associated with an improvement which would not be incurred if an improvement were funded by

---

[1]You do not ask, and we do not consider here, whether real property owners would have a cause of action against a commissioners court for the failure to complete an improvement with funds raised by the original assessment.

other means. The determination whether the particular costs raised in your query are assessable improvement costs or nonassessable administrative costs involves questions of fact which are not amenable to the opinion process and should be resolved by the commissioners court in the first instance.

## S U M M A R Y

Article 6702-3, V.T.C.S., requires the commissioners court to propose separate assessments and hold separate elections in each subdivision. Section (g) of article 6702-3 gives the commissioners court the authority to determine when the lien will be recorded after an assessment has been approved by a subdivision. If the costs of an improvement exceed the maximum assessment, the commissioners court may complete the improvement with non-assessment funds or propose a new assessment to complete the project and hold a new election according to the statutory requirements. The determination whether particular costs are assessable improvement costs or nonassessable administrative costs involves questions of fact which are not amenable to the opinion process and should be resolved by the commissioners court in the first instance.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General